UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENT P. NEUBECK, *et al.*,

        Plaintiffs,

    v.

ALL AMERICA INSURANCE COMPANY,
*et al.*,

        Defendants.

_____

                          22-CV-680-LJV
                          DECISION & ORDER

On July 11, 2022, the plaintiffs, Kent P. Neubeck and Kemper Independence Insurance Company ("Kemper"), commenced this action in New York State Supreme Court, Erie County.  Docket Item 1 at 1-2.  They allege that defendants All America Insurance Company ("All America") and Central Mutual Insurance Company ("Central") have breached their duty to defend Neubeck in a series of lawsuits arising from a motor vehicle accident in which Neubeck was driving a vehicle owned by defendant Paddock Chevrolet, Inc. ("Paddock").  *Id.* at 2, 15.  The plaintiffs seek a declaratory judgment as well as money damages.  *Id.* at 2.

On September 6, 2022, the defendants removed the action to this Court, Docket Item 1, and ten days later, the plaintiffs moved to remand.  Docket Item 2.  The defendants responded on October 12, 2022, and then amended their response the next day.  Docket Items 7 and 10.  On October 18, 2022, the plaintiffs replied.  Docket Item 11.

This Court heard oral argument and ordered supplemental briefing on November 29, 2022.  *See* Docket Item 15.  On December 6, 2022, the plaintiffs submitted their

supplemental brief, Docket Items 16 and 17, and on January 6, 2023, the defendants submitted their supplemental brief, Docket Item 27.

    For the following reasons, the plaintiffs' motion to remand is granted.

## FACTUAL BACKGROUND[1]

    On December 30, 2019, Neubeck was test-driving a 2020 Chevrolet Trailblazer owned by Paddock.  Docket Item 2-2 at 5.  He drove the vehicle with Paddock's permission, and he was accompanied by Hanna Mansour, a Paddock employee.  *Id.* at 5-6.  During the test-drive, the Trailblazer collided with a vehicle owned and driven by Santino Lococo.  *Id.* at 5.  The occupants of both vehicles—Neubeck and Mansour in the Trailblazer, and Santino and Dakota Lococo in the other vehicle—were injured in the collision.  *Id.*

    At the time of the accident, Neubeck had an insurance policy with Kemper (the "Kemper Policy").  *Id.* at 6.  That policy provided automobile liability coverage for "[Neubeck]'s use of vehicles he did not own, with limits of $500,000 per accident" and personal catastrophe liability coverage "with limits of $1,000,000 in excess over the $500,000 primary automobile liability coverage limits."  *Id.*  The Kemper Policy provided

---

[1] When considering a motion to remand, courts "generally evaluate jurisdictional facts . . . on the basis of the pleadings, viewed at the time when [the] defendant files the notice of removal," *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-57 (2d Cir. 2006) (citing *Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) (per curiam)), and "assume the truth of non-jurisdictional facts alleged in the complaint," *Guzman v. First Chinese Presbyterian Cmty. Affs. Home Attendant Corp.*, 520 F. Supp. 3d 353, 356 (S.D.N.Y. 2021) (citations omitted).  Courts also "may consider materials outside [] the complaint, such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis."  *Id.* (citations omitted).  The following facts are drawn from the complaint and the parties' other filings.

that its coverage "with respect to a vehicle [Neubeck does] not own shall be excess over any other collectible insurance" and that if Neubeck "has other collectible insurance that covers damages [that the personal catastrophe liability coverage] also covers, [the personal catastrophe liability coverage] shall be excess to and will not contribute with such other insurance." *Id.* at 6-7.

At the same time, Paddock had insurance policies with All America and Central (the "All America Policy" and the "Central Policy," respectively). *Id.* at 7-9. The All America Policy provided primary automobile liability coverage up to $1,000,000 per accident. *Id.* at 7-9; Docket Item 1-1 at 3. The Central Policy provided umbrella liability coverage up to $10,000,000. Docket Item 2-2 at 8-9; Docket Item 1-1 at 3. Paddock was the named insured, and the Trailblazer was a "covered auto," on both policies. Docket Item 2-2 at 7-9.

In New York, an owner's policy—such as the All America Policy—must include as an insured "any . . . person using the motor vehicle with the permission of the named insured[,] . . . provided his or her actual operation . . . is within the scope of such permission." *Id.* at 7-8 (citing N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.1 (2022)). The plaintiffs argue that because Neubeck was operating the Trailblazer with the permission of Paddock, the named insured under the All America Policy, Neubeck "was an insured" under that policy and entitled to liability coverage up to $1,000,000 "for his use of the [Trailblazer] at the time of the accident." *Id.* at 8. Similarly, they argue that because the Central Policy provided that any insured on any "underlying insurance" policy—including the All America Policy—was also an insured under the Central Policy,

Neubeck was an insured entitled to up to $10,000,000 in umbrella liability coverage.  *Id.* at 8-9.

When the accident resulted in four lawsuits, Neubeck sought coverage under the All America Policy and the Central Policy.  *Id.* at 9; Docket Item 2-10 at 7.  All America and Central responded that Neubeck was "not an 'insured'" under their policies because he was a Paddock customer who had his own liability coverage—through Kemper— "which satisfies the New York financial responsibility law limits."  Docket Item 2-2 at 10-11; 20.  Since then, Kemper settled three of the four underlying suits.  Docket Item 2-10 at 7.

The plaintiffs—Neubeck and Neubeck's insurance carrier, Kemper—now allege that the All America Policy, "which purports to remove coverage for a customer who is a permissive user," violates New York regulations.  Docket Item 2-2 at 11-12.  They seek a declaratory judgment that: 1) the provision of the All America Policy excluding coverage for Paddock's customers is void and unenforceable as a matter of public policy, *id.* at 11-12; 2) Neubeck was an "insured" under the All America Policy, and therefore the Central Policy, and All America has the primary obligation to defend and indemnify him for claims arising from the accident, *id.*; and 3) the coverage under the Kemper Policy "is excess over the coverage under the [All America] [P]olicy," *id.* at 13-14.  Furthermore, to the extent that Neubeck's liability in the underlying suits exceeds the All America Policy limit of $1,000,000, the plaintiffs seek a judgment apportioning any excess liability coverage between Kemper and Central.  *Id.* at 14.  Finally, Kemper seeks reimbursement of "any amounts [that it paid] on behalf of [Neubeck] . . . in connection with any and all claims arising out of the accident."  *Id.*

## PROCEDURAL BACKGROUND

After the plaintiffs commenced this action in New York State Supreme Court, Docket Item 1 at 1-2, the defendants answered and asserted a counterclaim against Kemper seeking reimbursement for any amounts All America paid to settle property damage claims arising from the accident, *id.* at 2; Docket Item 1-1 at 20, 30-31. They amended that answer on August 30, 2022. Docket Item 1 at 2.

With Central's and Paddock's consent, All America then removed the action to this Court based on diversity of citizenship. *Id.* at 2, 4. In their removal papers, the defendants argued that the case was subject to removal because "[t]here is complete diversity of citizenship between Kemper, All America, and Central, the only parties seeking relief in the action," and the amount in controversy exceeds $75,000. *Id.* at 3-5. And they asserted that removal was timely "because All America has not been properly joined and served" and because Kemper first informed the defendants that the amount in controversy exceeds $75,000 on August 25, 2022, less than two weeks before the case was removed. *Id.* at 5-7.

The plaintiffs moved to remand the case to state court on three grounds. Docket Item 2-10. First, they argued that there is no diversity of citizenship because both Neubeck, a plaintiff, and Paddock, a defendant, are citizens of New York and neither is a nominal party. *Id.* at 6-8. Second, they asserted that the notice of removal was untimely because All America had been properly served more than thirty days before the case was removed. *Id.* at 9-10. And finally, they argued that the case should be remanded because the defendants "failed to comply with Local Rule [of Civil Procedure] 81, which requires a removing party to provide to the federal court a civil cover sheet,

an index identifying each document filed and/or served in the state court, and copies of each document filed therein." *Id.* at 5-6, 10.

As noted above, the parties have briefed the motion, Docket Items 2, 7, 10-11, 16-17, 27, and this Court has heard oral argument, *see* Docket Item 15.

## **LEGAL PRINCIPLES**

"A defendant may remove an action originally filed in state court to federal court if the case originally could have been filed in federal court." *Vera*, 335 F.3d at 113 (citing 28 U.S.C. § 1441(a)). But a district court that lacks subject matter jurisdiction over a removed case shall remand the case to state court. 28 U.S.C. § 1447(c); *see Atanasio v. O'Neill*, 235 F. Supp. 3d 422, 424 (E.D.N.Y. 2017) ("[I]f a federal court lacks subject matter jurisdiction over the removed action, the case must be remanded from whence [sic] it came.").

"In a case removed to federal court from state court, the removal statute is to be interpreted narrowly, and the burden is on the removing party to show that subject matter jurisdiction exists and that removal was timely and proper." *Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014) (citing *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). "All doubts should be resolved against removability." *Id.* (citing *Lupo*, 28 F.3d at 274). Furthermore, "[o]n a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." *Meeks v. City of Rochester*, 2022 WL 13789086, at *1 (W.D.N.Y. Oct. 24, 2022) (quoting *Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994)).

6

**DISCUSSION**

As noted above, the plaintiffs assert three potential grounds for remand.  First, they argue that this Court does not have subject matter jurisdiction.  Docket Item 2-10 at 6-8.  Second, they argue that removal was untimely.  *Id.* at 9-10.  Finally, they argue that the defendants' notice of removal did not comply with the Local Rules.  *Id.* at 10. Because this Court agrees with the plaintiffs that this case should be remanded both because the defendants failed to comply with Local Rule of Civil Procedure 81 and because the Court does not have jurisdiction, it remands for those reasons and does not reach the plaintiffs' other argument.

## I.      FAILURE TO COMPLY WITH LOCAL RULE 81

A district court may remand a removed action "on the basis of any defect in the removal procedure."  *Polito v. Hanover Ins. Grp., Inc.*, 2018 WL 3598873, at *4 (W.D.N.Y. July 27, 2018) (quoting *In re Vill. of Kiryas Joel, N.Y.*, 2012 WL 1059395, at *2 (S.D.N.Y. Mar. 29, 2012)).  Local Rule of Civil Procedure 81 requires a party removing an action to this Court to submit, *inter alia*, "an index identifying each document filed and/or served in the state court action" and a copy of each such document tabbed and arranged in chronological order.  Loc. R. Civ. P. 81; *see also* 28 U.S.C. § 1447(b) ("[A district court] may require the removing party to file . . . copies of all records and proceedings in such [s]tate court.").

The plaintiffs argue that the defendants' notice of removal "is deficient [and] failed to comply with Local Rule 81" because it did not include a copy of a motion for summary judgment pending in state court.  Docket Item 2-10 at 10.  The defendants respond that

this is "at most[] a procedural and ministerial transgression[] and therefore not appropriate grounds for remand."  Docket Item 10 at 10.

But courts in this district have remanded cases when a notice of removal violated Local Rule 81.  *See, e.g.*, *Polito*, 2018 WL 3598873, at *5 (holding that removal was "defective" because the defendant violated 28 U.S.C. § 1446(a) and Local Rule 81 by failing to include in its removal petition "the exhibits attached to the state-court complaint"); *Bagnato v. The Home Depot*, 2004 WL 625270, at *1-2 (W.D.N.Y. Jan. 15, 2004) (remanding an action because the notice of removal "failed to disclose [a] pending motion" filed in state court).  Because the right to removal must be "narrowly construe[d]," this Court finds that the defendants' notice of removal is deficient because it did not include a copy of the pending motion for summary judgment as required by Local Rule 81.  *See Bagnato*, 2004 WL 625270, at *1.

This action therefore is remanded for that reason alone.

## II.   DIVERSITY JURISDICTION

A civil action brought in state court may be removed to a federal district court if the district court has original subject matter jurisdiction.  28 U.S.C. § 1441(a).  Here, the defendants based their removal on diversity jurisdiction.  Docket Item 1 at ¶ 8.

A district court has diversity jurisdiction if 1) there is diversity of citizenship between the parties on each side, and 2) the amount in controversy exceeds $75,000.[2] 28 U.S.C. § 1332(a).  Diversity of citizenship requires "complete diversity so that each

---

[2] The plaintiffs do not dispute that the amount in controversy here exceeds $75,000.  *See* Docket Items 2-10 and 11.

plaintiff's citizenship [is] different from the citizenship of each defendant." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004).

When assessing diversity jurisdiction, however, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)); *see also People by Underwood v. LaRose Indus. LLC*, 386 F. Supp. 3d 214, 217 (N.D.N.Y. 2019) ("[O]nly those [parties] with a real and substantial interest in the controversy are considered" for purposes of diversity jurisdiction. (quoting *State of New York by Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 704 (S.D.N.Y. 1982))). "Nominal parties are those that have no personal stake in the outcome of the litigation and who are not necessary to an ultimate resolution." *Johnson v. Cnty. of Suffolk*, 280 F. Supp. 3d 356, 362 (E.D.N.Y. 2017) (citations and internal quotation marks omitted).

Here, both Neubeck, a plaintiff, and Paddock, a defendant, are citizens of New York. Docket Item 1 at 4; Docket Item 2-10 at 8.[3] Ordinarily, that would defeat diversity jurisdiction on its face. *See Briarpatch*, 373 F.3d at 302. But the defendants urge this

---

[3] Defendants All America and Central are both citizens of Ohio. Docket Item 1 at 3; Docket Item 9. Plaintiff Kemper's citizenship is unclear; the defendants have provided a document listing Florida as Kemper's principal place of business, Docket Item 1-1 at 48, but Kemper's corporate disclosure statement says that it "is an Illinois entity that is also commercially domiciled in California," Docket Item 3. Regardless, Kemper's citizenship is diverse from the other parties' if it is a citizen of any of those states.

Mansour and Lococo, New York citizens, are also defendants in this action, but both sides agree that they are nominal parties and that this Court should not consider their citizenship for the purpose of diversity jurisdiction. *See* Docket Item 1 at 4; Docket Item 2-10 at 8.

Court to ignore both Neubeck's and Paddock's citizenship when assessing diversity jurisdiction because both are nominal parties. Docket Item 1 at 3-4. Alternatively, they argue that Paddock may be realigned as a plaintiff, thus preserving complete diversity. Docket Item 10 at 8-9. The plaintiffs, on the other hand, argue that Neubeck and Paddock are "real parties in interest"—not nominal parties—and that Paddock cannot be realigned. Docket Item 2-10 at 6-8.

### A.    Neubeck

Neubeck's status as a nominal party hinges on whether he has a "personal stake" in the outcome of this action. *See Johnson*, 280 F. Supp. 3d at 362. The defendants argue that Neubeck is a nominal party because "Kemper is the only party seeking relief." Docket Item 1 at 4. The plaintiffs counter that Neubeck is not a nominal party because he "personally seeks $11,000,000 in coverage that was improperly denied to him." Docket Item 2-10 at 7; Docket Item 11 at 7. This Court agrees with the plaintiffs.

Simply put, the amount of liability coverage available to Neubeck depends on the outcome of this action. If the plaintiffs succeed, Neubeck will have $12,500,000 in liability coverage for injuries resulting from the accident: $1,500,000 from the Kemper Policy and $11,000,000 from the All America and Central Policies. Docket Item 2-10 at 7. But if this action is resolved in the defendants' favor, Neubeck will have only the $1,500,000 in coverage provided by the Kemper Policy. *Id.* That is a meaningful difference, especially because the damages in the underlying suits may exceed the Kemper Policy limits. *See* Docket Item 16 at 9 (noting that the plaintiff in one underlying suit is seeking $2,750,000 in damages).

Admittedly, "[d]istrict courts around the country have held that 'the insured need not be joined in a declaratory-judgment action between [multiple] insurers to determine their respective liability." *Liberty Mut. Ins. Co. v. Sterling Ins. Co.*, 2020 WL 6699872, at *2 (E.D.N.Y. Nov. 12, 2020) (quoting *Ins. v. Mid-Century Ins. Co.*, 2016 WL 4107690, at *3 (D.N.J. July 29, 2016)).  But this case involves more than simply deciding which insurer is on the hook; it also involves how much protection Neubeck has available for damages caused by his alleged negligence.  And for that reason, Neubeck has a personal stake—indeed, an $11,000,000 stake—in the outcome of this action.[4]

Neubeck therefore is not a nominal party.

### B.    Paddock

The defendants also argue that regardless of Neubeck's status, this Court has jurisdiction either because Paddock is a nominal party or because Paddock may be realigned as a plaintiff to preserve complete diversity.  Docket Item 10 at 7-9.  But this Court finds neither argument persuasive.

### 1.    Nominal Party Status

District courts in this Circuit use the fraudulent joinder standard to evaluate whether a defendant is a nominal party.  *See Romano v. Am. States Ins. Co.*, 295 F. Supp. 3d 307, 312 (W.D.N.Y. 2017) ("Fraudulent joinder is a legal term of art [used] to refer to the joinder of unnecessary or nominal parties in order to defeat federal

---

[4] In fact, counsel for the defendants conceded that very fact "for purposes of this argument" at oral argument.  *See* Docket Item 21 at 8-9 ("THE COURT: . . . Are you going to concede that Neubeck is not a nominal party because the amount of his coverage hinges on this declaratory judgment action?  [COUNSEL]: I'm willing to concede that for purposes of this argument.").

jurisdiction." (alteration in original) (quoting *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006))); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 389 (S.D.N.Y. 2006) ("The question of whether a party is nominal appears to be governed by essentially the same legal standard as whether a party is fraudulently joined." (citations omitted)).[5]  Under this standard, "the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Romano*, 295 F. Supp. 3d at 312 (quoting *Pampillonia*, 138 F.3d at 461); *see also McAlpin v. RLI Ins. Co.*, 320 F. Supp. 2d 42, 43 (W.D.N.Y. 2004) ("The removing party bears the burden of demonstrating that a nondiverse defendant is a formal or nominal party whose citizenship may be ignored for diversity purposes." (citing *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992))).

For this analysis, the relevant question is "whether the plaintiff can establish a claim under state [law], not federal law."  *Romano*, 295 F. Supp. 3d at 312 (quoting *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 393 (S.D.N.Y. 2009)). Furthermore, "[t]he issue is not whether the plaintiff is *likely* to prevail against the non-diverse defendant, but whether the pleading sets forth *any* possible claim under state

---

[5]  The fraudulent joinder standard typically is used to assess only a defendant's status.  *See, e.g.*, *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998) ("[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as *defendants* parties with no real connection with the controversy." (emphasis added)).  Here, this Court uses that test to address only whether Paddock is a nominal party, although it could have used it to address Neubeck's status as well.  And if it had, the result would have been the same as that reached above.

law." *Id.* (emphasis added) (quoting *Stewart v. Raymond Corp.*, 587 F. Supp. 2d 572,

575 (E.D.N.Y. 2008)).  "[A] determination by [a court] as to whether a plaintiff *could* state

a viable claim [against a defendant] in state court is subject to a relaxed inquiry." *Id.* at

313 (emphasis in original).  "Indeed, whether the plaintiffs have presently asserted a

claim against the defendant is not determinative of improper joinder of a nominal party."

*Id.* (alterations, citation, and internal quotation marks omitted).

The plaintiffs argue that Paddock is not a nominal party because "claims of

vicarious liability could potentially be raised against Paddock" under New York law.[6]

Docket Item 16 at 12 (citing N.Y. Veh. & Traf. Law § 388(1), under which the owner of a

vehicle may be held vicariously liable for injuries resulting from a permissive user's

operation of that vehicle).  The defendants have not addressed this argument, *see*

Docket Item 27 at 6-7; *see also* Docket Item 10 at 7-9, let alone provided "clear and

convincing evidence . . . that there is no possibility" that the plaintiffs can state a claim

against Paddock in state court, *see Romano*, 295 F. Supp. 3d at 312.  Especially

---

[6] The plaintiffs also argue that "[i]n the specific context of an insurance coverage action . . . where the plaintiff brings an action seeking a declaratory judgment that the defendant owes a duty to defend and indemnify the driver of an autombile in the underlying action," both the insurer and the named insured are necessary parties. Docket Item 2-10 at 6-8 (citing *Bello v. Emps. Motor Corp.*, 240 A.D.2d 527, 659 N.Y.S.2d 64 (2d Dep't 1997); *White v. Nationwide Mut. Ins. Co.*, 228 A.D.2d 940, 644 N.Y.S.2d 590 (3d Dep't 1996)).  But the plaintiffs misread the case law.

In both *White* and *Bello*, the plaintiff seeking indemnification was the named insured, and declaratory judgments were sought to determine whether the insurer owed the named insured a duty to defend and indemnify.  As a result, those named insureds depended on the outcome of the action for insurance coverage, had their own assets at stake, and therefore were necessary parties.  Here, Paddock is the named insured, and if All America and Central disclaimed liability as to Paddock, Paddock would certainly be a necessary party.  But that is not the case; All America's and Central's duties to Paddock are not at issue here, and *White* and *Bello* are therefore inapposite.

because "[a]ll doubts should be resolved against removability," *see Novartis*, 39 F. Supp. 3d at 350, this Court finds the plaintiffs' reasoning persuasive.

The complaint does not ask for relief from Paddock, *see* Docket Item 1 at 25-26, but "[i]t is . . . well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint." *St. Paul*, 409 F.3d at 80. And the plaintiffs note that under New York's vicarious liability law, they—or at least Neubeck—may well have a viable claim against Paddock.[7] Docket Item 16 at 12. At the very least, the defendants have not met their burden of showing that "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against [Paddock] in state court." *See Romano*, 295 F. Supp. 3d at 312 (quoting *Pampillonia*, 138 F.3d at 461); Docket Item 27.

Given the "relaxed" standard for this inquiry, *see Romano*, 295 F. Supp. 3d at 313, and the fact that jurisdictional questions "should be resolved against removability," *see Novartis*, 39 F. Supp. 3d at 350, this Court concludes that Paddock's status "raise[s] serious doubts about th[is] Court's jurisdiction," *see Tyco*, 422 F. Supp. 2d at 391. And the defendants' argument that Paddock is a nominal party because the plaintiffs "ha[ve] not asserted a cognizable cause of action against or sought relief from Paddock," *see* Docket item 27 at 7, does not quell those doubts, *see Romano*, 295 F. Supp. 3d at 313 ("[W]hether the plaintiffs have presently asserted a claim against the defendant is not

---

[7] The plaintiffs provide several discrete examples of Paddock's interest in the outcome of this matter. For example, they say that Paddock does not want to share coverage with Neubeck, Docket Item 2-10 at 8; Docket Item 11 at 8, and that Paddock would lose its right to seek indemnity from Neubeck if both are co-insureds on the All America and Central Policies, Docket Item 16 at 15. Because this Court finds that the defendants have not met their burden, it need not—and does not—address those specific issues.

determinative of improper joinder of a nominal party." (alterations, citation, and internal quotation marks omitted)).  The question is not whether the plaintiffs have stated a claim against Paddock; the question is whether they could.  *See id.* at 315 (finding that a defendant vehicle owner was not fraudulently joined even though "the allegations in the complaint do not sufficiently state a claim for vicarious liability as written").

For all those reasons, Paddock is more than a nominal defendant, and its citizenship must be considered for diversity purposes.

### 2.    Realignment

"In assessing the alignment of the parties, diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants."  *Id.* (alterations and citation omitted).  Instead, "[t]o determine the proper alignment of the parties, the Second Circuit has adopted a 'collision of interests' test."  *Id.* (citation omitted).  This test requires "the existence of an actual, substantial controversy" between the plaintiffs and the defendants.  *Md. Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1993).

The defendants argue that even if Paddock is not a nominal party, it may be realigned as a plaintiff and therefore be on the same side of the ledger as Neubeck. Docket Item 10 at 8-9.  But this argument presupposes that Paddock is a nominal party because Paddock has no interest adverse to Neubeck's.  *See id.* ("Since no claims are made against Paddock in the [c]omplaint, and since Paddock is by definition a nominal party who may be dismissed from this matter at the court's discretion at any time, whether Paddock is aligned as a plaintiff or defendant is for naught.").  And for the reasons just stated, that is not the case.

15

Therefore, this Court cannot realign Paddock as a plaintiff because there well may be an "actual, substantial controversy" between Paddock and Neubeck. *See Md. Cas. Co.*, 23 F.3d at 622.[8]

## CONCLUSION

In sum, the defendants' notice of removal was deficient because it did not comply with Local Rule 81. Additionally, neither Neubeck nor Paddock are nominal parties and Paddock cannot be realigned as a plaintiff. Especially because this Court must resolve all doubts against removability, it finds that it does not have subject matter jurisdiction.

For both those reasons, the plaintiffs' motion to remand, Docket Item 2, is GRANTED. The case is REMANDED to New York State Supreme Court, Erie County. The Clerk of the Court shall close the case.


SO ORDERED.

Dated:   January 17, 2023
         Buffalo, New York


                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE

---

[8] There are other, more practical reasons that make remand the best option. The underlying litigation is pending in a New York State court, and issues of insurance coverage dovetail with issues of liability in that case. Judicial efficiency therefore counsels in favor of remand. What is more, the question of insurance coverage hinges on New York law and regulations, which the New York State court is better suited to address. Of course, neither of those reasons is sufficient for remand. But they lend support to the principle that "all doubts should be resolved against removability" here. *See Novartis*, 39 F. Supp. 3d at 350.